RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE __3/10/11__
BY _____

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JIMMIE L. BENOIT | : | DOCKET NO. 3:09-0223 |
| VS. | : | JUDGE TRIMBLE |
| MEDVANCE INSTITUTE OF BATON ROUGE AND KIMC INVESTMENTS, L.P. | : | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is "Defendant's Amended Motion for Case-Dispositive Summary Judgment" ( R. #38) wherein KIMC Baton Rouge, LLC (incorrectly named in the complaint as "MedVance Institute of Baton Rouge" and/or "KIMC Investments, L.P.")("MedVance") seeks to have the claims against it dismissed pursuant to rule 56 of the Federal Rules of Civil Procedure. Plaintiff opposes the motion. Also before the court is "Defendant's Motion to Strike Portions of the Declarations Filed in Opposition to Defendant's Motion for Summary Judgment" (R. #51) wherein MedVance moves to strike certain statements contained in the declarations filed in opposition to its motion for summary judgment. Because the motion to strike is relevant to the summary judgment evidence submitted in opposition to the motion, the court will consider both motions contemporaneously.

## FACTUAL STATEMENT

MedVance is a medical training institute which is comprised of classroom study and laboratory work; it also includes clinical externships at local hospitals.[1] From approximately June 21, 2004 until March 11, 2005, plaintiff Jimmie Benoit, a white female, worked at MedVance as a

---

[1] Defendant's exhibit C, Edwards Dec. ¶ 2.

Clinical Instructor in the Surgical Technology Program, but she resigned on about March 11, 2005.[2] From approximately May 22, 2006 to December 4, 2006, Ms. Benoit worked as Lead Surgical Technologist at Ochsner Medical Center of Baton Rouge.[3] On or about February 19, 2007, Ms. Benoit was rehired by MedVance as the ST Program Director.[4] During the relevant time period in 2007, Benoit supervised three MedVance employees: Clinical Coordinator, Jesse Harrison ("Harrison"), a black male, Clinical Instructor, Tierra Fleet-Hughes, ("Fleet-Hughes"), a black female, and ST Instructor Susan Blanchard ("Blanchard"), a white female.[5] Ms. Benoit reported to the Director of Education, Betty Myles ("Myles"), a black female, who in turn reported to the Campus Director, Russell Battiata ("Battiata"), a hispanic male.

In February 2007, about five (5) days after she was hired, Mr. Battiata inquired of Ms. Benoit as to her nationality; her response was "French, pure French."[6] Ms. Benoit did not report this incident to anyone.[7] About two months later, Ms. Benoit was attending a meeting in Ms. Myles' office with Mr. Battiata, Ms. Myles, Mr. Harrison and Ms. Fleet-Hughes. During that meeting, Mr. Battiata stated that "we [are] the first black administration" and "we need to show the corporate office that we [can] do this."[8]

---

[2] Benoit depo. R. #36, attached exhibit 9.

[3] Defendant's exhibit E.

[4] R. #36, Benoit depo., pp. 305-306.

[5] R. #36, Benoit depo. p. 109, lines 8-17, p. 187, lines 6-9 and attached exhibit 2.

[6] R. #36, Benoit depo., pp. 206-207.

[7] R. #36, Benoit depo., p.. 208, lines 9-10.

[8] R. #36, Benoit depo., p. 186, lines 10-16.

In her deposition, Ms. Benoit testified that this comment made her uncomfortable, that she stopped the meeting, and asked to speak with Mr. Battiata outside.[9] Once outside, Ms. Benoit told Mr. Battiata that she "felt very uncomfortable because there are people [in the meeting] that are going to have to answer to me and [she] didn't want them to think that [she] was prejudice in any way..."[10] Mr. Battiata responded that he was "sorry if it made [her] feel that way but that's not what [he] meant."[11] Ms. Benoit testified that she felt Mr. Battiata was sincere in his apology.[12] Ms. Benoit further testified that she did not report the incident because she was afraid she would be retaliated against by Battiata.[13]

On August 13, 2007, Mr. Battiata and Ms. Myles started an investigation into Ms. Benoit's visits to certain hospital sites based on the mileage reports she had turned in.[14] On that same day, Ms. Myles contacted Donna Holman, a ST clinical student at Riverwest, who informed her that Ms. Benoit had never visited her site.[15] Karen Simpson, the site supervisor for Riverwest informed Mr. Battatia that Ms. Benoit had not visited the site.[16] Also, on August 13, 2007, Mr. Battiata contacted

---

[9] R. #36, Benoit depo., p. 190, lines 14-21.

[10] R. #36, Benoit depo., pp. 190, line 22 -p. 191, line 2.

[11] R. #36, Benoit depo., p. 193, lines 2-6.

[12] R. #35, Benoit depo., p. 193, lines 13-18.

[13] R. #36, Benoit depo., p. 253, lines 13-20.

[14] See Defendant's exhibit C,Mileage Expense Reports for week ending July 16-20 and July 23-27, 2007 and June 18 through June 29, 2007.

[15] Defendant's exhibit A, Battiata declaration, ¶ 10; Defendant's exhibit B, Myles declaration, ¶ 10.

[16] Defendant's exhibit A, Battiata declaration ¶ 10.

Mr. Harrison, the OR tech at Ochsner and a former ST Program employee with MedVance who indicated that Ms. Benoit had not visited Ochsner.[17] On August 14, 2007, Mr. Battiata contacted Ms. Holman who repeated what she told Ms. Myles the previous day.[18] Mr. Battiata contacted Ms. Fleet-Hughes, a clinical student, who corroborated Ms. Holman's statements and further stated that Ms. Benoit had not visited any sites for a couple of months.[19] The mileage expense reports signed by Ms. Benoit claims that she visited Riverwest on June 27, 2007 and July 24, 2007, and that she visited Ochsner on June 19, 21 and 26, 2007 and July 16, 20, and 23, 2007.

Based on this initial investigation, Mr. Battiata declares that he believed Ms. Benoit was turning in inaccurate and fraudulent mileage reports for her visits to both Riverwest and Ochsner.[20]

Ms. Benoit disputes that Mr. Battiata and/or Ms. Myles contacted Ms. Karen Simpson to investigate her mileage claims. She submits her own declaration wherein she states that she did not make site visits in order to evaluate students.[21] [22] Ms. Benoit further declares that the persons Mr. Battiata and Ms. Myles contacted, except for Karen Simpson, were not persons who would have knowledge of whether or not she was performing her duties and/or visiting sites.[23] Ms. Benoit submits the declaration of Karen Simpson, one of the persons Mr. Battiata claims he contacted at

---

[17] Id.

[18] Id. ¶ 11.

[19] Id.

[20] Id., ¶ 12.

[21] Other than to check on Jess Harrison's expense reports.

[22] Plaintiff's exhibit (not identified), R. #43-3, Declaration Jimmie Benoit, ¶ 8.

[23] Id., ¶ 10.

Riverwest regarding site visits by Ms. Benoit. Ms. Simpson declares that she has "no recollection" of speaking with either Mr. Battiata or Ms. Myles or anyone else regarding Ms. Benoit's failure to visit Riverwest, and that she does recall Ms. Benoit visiting Riverwest during 2007.[24] She further declares that Ms. Holman, a clinical student, would not have knowledge of her visits to Riverwest in 2007.[25] Ms. Benoit also declares that Ms. Fleet-Hughs and Mr. Harrison would not have knowledge of her site visits.[26]

Ms. Benoit submits the declaration of Kelly Matherne, the Head Preceptor at Ochsner who states that she met with Ms. Benoit in 2007.[27] Ms. Matherne does not state when or what months she met with Ms. Benoit; she also confirms that Ms. Benoit would not meet with students, but with the OR Director to negotiate contracts.[28]

On August 14, 2007, Ms. Benoit did not appear for work. On that same day, a police officer called MedVance and informed them that Ms. Benoit was arrested for a DWI.[29] Mr. Battiata attempted to contact Ms. Benoit on her cell phone and home phone, but was unable to reach her.[30] He also called the sites she was supposed to visit and was told that she was not at any of the sites.[31]

---

[24] Plaintiff's exhibit (not identified), Simpson declaration, ¶¶ 4 and 5.

[25] Id., ¶ 11.

[26] Id., ¶¶ 12 and 13.

[27] Plaintiff's exhibit ( not identified), Matherne declaration, ¶¶ 2, 3 and 5.

[28] Id., ¶¶ 4 and 5.

[29] Defendant's exhibit A, Battiata Declaration, ¶ 13; Defendant's exhibit B, Myles Declaration ¶ 15.

[30] Id.

[31] Id.

The following day, *The Baton Rouge Advocate* reported that Ms. Benoit was arrested for driving while intoxicated on August 14, 2007.[32]

On August 17, 2007, Mr. Battiata prepared a memo memorializing the events relating to Ms. Benoit.[33] ADP Total Source[34] Human Resource Representative, KRISTI Parker, recommended that Ms. Benoit be terminated for violation of company policies/rules, specifically, for falsifying mileage reports and for being arrested for a DWI (second-offense) during working hours.[35] Mr. Battiata telephoned Ms. Benoit and informed her that she was being terminated for the aforementioned misconduct.[36]

## MOTION TO STRIKE

MedVance seeks to strike statements contained in the plaintiff's declarations filed in opposition to the motion for summary judgment. MedVance complains that certain statements (1) are not made from personal knowledge, (2) are inconsistent with Ms. Benoit's own prior sworn testimony, (3)are irrelevant to the matters for which the declarations have been offered, (4) fail to disclose either the person and/or the substance of their knowledge in Benoit's Rule 26(a) disclosures or answers to interrogatories, and (5)are comprised of personal opinions, speculative statements, and unsupported self-serving arguments. Thus, MedVance seeks to have these statements stricken from

---

[32] Id., ¶ 14 and exhibit D attached thereto.

[33] Defendant's exhibit E.

[34] ADP Total Source was a third-party Human Resources Administrator who handled human relations issues for MedVance employees at the relevant time. Defendant's exhibit B, Myles declaration, ¶ 5.

[35] Defendant's exhibit B.

[36] Defendant's exhibit A, Battiata declaration, ¶ 17.

the record and/or disregarded by the court for purposes of determining defendant's motion for summary judgment.

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that:

> affidavits or declarations used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Federal Rule of Evidence 602 provides, in pertinent part: "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Federal Rule of Evidence 401and 402 provides that statements that are irrelevant to the matter for decision are not admissible.

*Ms. Benoit's declaration*

MedVance complains of paragraphs 3 and 4 in Jimmie Benoit's declaration which provide the following:

> 3.      On or about August 14, 2007, I was involved in a motor vehicle accident. I immediately called my mother and asked her to call my employer to let them know I would not be able to appear that day.
>
> 4.      I rented a rental vehicle and appeared at work the following morning and went to Mr. Battiata's office. We discussed my motor vehicle accident. He was aware because my mother had informed them the previous day. Mr. Battiata then told me that I should take off until Friday of that week to recover and I did so.

MedVance asserts that Ms. Benoit never disclosed her mother as a person with knowledge on this issue in her Rule 26(a) disclosure or discovery responses, nor did she testify in her deposition concerning her mother's purported call to MedVance. Rather, Ms. Benoit's Rule 26(a) disclosures limited Linda Benoit's knowledge to Ms. Benoit's damages. MedVance complains that in response to direct questions regarding her accident, Ms. Benoit never gave any indication that her mother was

involved in any manner whatsoever. MedVance submits the following colloquy from Ms. Benoit's deposition:

> Q. Okay. When you told Russell [Mr. Battiata] on that Wednesday that you had been in an accident the day previous, did he know before you told him or did he indicate that that's the first he's heard of that?

> A. No, he did not know. That was the first he had heard of it.

MedVance argues that Ms. Benoit cannot use subsequent declarations to contradict her own sworn deposition testimony and/or to alter her own admissions for the purpose of opposing a summary judgment and to create a factual dispute. We agree. A party cannot use subsequent declarations to contradict their own sworn deposition testimony or to alter their own admissions for the purpose of opposing a summary judgment and establishing a factual dispute.[37] The court finds that the declaration by plaintiff completely contradicts her earlier deposition testimony. Thus, paragraphs 3 and 4 will be stricken from the record.

MedVance complains of paragraph 6 which references an alleged incident involving students smoking marijuana and one of the students using the "n" word. MedVance seeks to strike these statements because they are irrelevant, and the incident was not disclosed in Ms. Benoit's deposition or discovery responses. We find the incident is entirely irrelevant and immaterial to this case and as such will not be considered.

MedVance seeks to strike paragraphs 8 and 10 wherein Ms. Benoit attempts to define the

---

[37] Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984)("[T]he nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."). See also BLS Joint Venture v. Banc Home Savings Assoc., 985 F.2d 556, at *4 (5th Cir. 1993); Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 386 (5th Cir. 2000).

scope of her job duties, specifically, that she was not required to make site visits or evaluate students. MedVance argues that the declarations are self-serving and conclusory. MedVance further argues that Ms. Benoit's statement as to the appropriate person to contact to see if she was performing her job duties is inaccurate, and that Ms.Benoit's statements are unsupported by any record evidence. Medvance contends that the employer decides the employee's job duties. Lastly, MedVance seeks to strike the last sentence in parapgraph 10[38] because it does not accurately reflect what Karen Simpson states in her declaration,[39] is not based on personal knowledge, and is not the proper subject of a declaration. We find no basis in law to strike these paragraphs. Ms. Benoit can certainly testify as to her knowledge of what she believes her job duties were. As to the last sentence in paragraph 10 which MedVance purports to be an inaccurate statement by Ms. Benoit, we are able to discern that Ms. Simpson's declaration declared that "she had no recollection" versus Ms. Benoit's declaration which declares that Ms. Simpson was never contacted. Accordingly, we will not strike the last sentence, but we are aware of the difference in the two statements/declarations.

---

[38] The challenged declaration is as follows:

The persons they allege checking with, except for Karen Simpson, were not persons who would have any knowledge whatsoever if I was performing my duties. Ms. Simpson has submitted her own Declaration stating she never was contacted by either party.

[39] Karen Simpson's relevant declarations are as follows:

3.    I have read the declaration of Russell Battiata and Betty Myles.

4.    I have no recollection whatsoever of speaking to either of these persons or anyone else at MedVance regarding Ms. Benoit's failure to visit Riverwest.

MedVance seeks to strike paragraphs 11,[40] 12,[41] and 13.[42] MedVance maintains that these declarations are not based on personal knowledge or record evidence and/or Ms. Benoit has failed to provide a sufficient foundation for such statements. Plaintiff argues that she would have knowledge of those who were her subordinates and the students that she would have met with. We find no basis in law to strike these paragraphs from the record. Accordingly, the motion to strike paragraphs 11, 12 and 13 will be denied.

*Linda Benoit's declaration*

MedVance seeks to strike Ms. Linda Benoit's (plaintiff's mother) declaration in its entirety, or alternatively, that paragraphs 3 and 4 should be stricken because they concern solely the issue of informing MedVance that Ms. Benoit had been in a motor vehicle accident. MedVance argues that Ms. Benoit never disclosed her mother as a person with knowledge of this issue in her Rule 26(a) disclosure or discovery responses, nor did Jimmie Benoit testify in her deposition concerning her mother's purported call to MedVance. MedVance reiterates that Linda Benoit's Rule 26(a)

---

[40] Paragraph 11 is as follows:

Donna Holman was a clinical student and would not have had any knowledge as to whether or not I visited Riverwest in 2007. . . .

[41] Paragraph 12 is as follows:

Tierra Fleet-Hughes was my subordinate in 2007 and likewise would not have had any knowledge whatsoever as to whether or not I visited my sites.

[42] Paragraph 13 is as follows:

Mr. Jesse Harrison was an OR Tech at Ochsner at the time and I would not have visited with him in order to negotiate my contract with Ochsner. I would have met with Angie Baldridge. Mr. Harrison would have had no knowledge whatsoever if I had made my site visits.

disclosures were limited to her knowledge of plaintiff's damages.

Plaintiff argues that the issue of being absent from work because of the vehicle accident was never raised, thus there was no reason to disclose such information. We find this argument completely without merit. As noted by MedVance, plaintiff swore under oath in her deposition that she informed her employer of the accident the following day. Plaintiff testified as follows:

Q.    And did you tell him about the accident?
A.    Oh, he knew I was in an accident.
Q.    How did he know?
A.    Because I told him, yes. Now, did I go into detail saying, hey, I got arrested and duh, duh, duh, no?
Q.    Okay. When you told Russell on that Wednesday that you had been in an accident the day previous, did he know before you told him or did he indicate that that's the first he's heard of that?
A.    No, he did not know. That was the first he had heard of it.[43]

We find that Linda Benoit's declaration entirely contradicts Jimmie Benoit's deposition testimony. Furthermore, Linda Benoit's declaration is irrelevant to the issues, and was not disclosed by plaintiff as a person of knowledge other than for plaintiff's damage claims. Accordingly, paragraphs 3 and 4 of Linda Benoit's declaration shall be stricken from the record.

*Kelly Matherne's declaration*

MedVance maintains that Kelly Matherne's declaration should be stricken in its entirety because she was not disclosed in Ms. Benoit's rule 26(a) disclosures or answers to interrogatories. MedVance also challenges Ms. Matherne's declaration that Ms. Benoit did not meet with students but instead she tried to negotiate contracts with Ochsner's OR director. MedVance argues that Matherne's declaration provides no factual basis to establish that Matherne has personal or first hand

---

[43] R. # 36-1, Jimmie Benoit depo. p. 101, line 23 - p. 102, line 11.

knowledge of all of Ms. Benoit's job duties and employment obligations.

Plaintiff submits that Kelly Matherne is actually Kelly Herron and further criticizes defendant because MedVance should have known that Kelly's last name had changed due to marriage. Neither party indicates whether or not Kelly Herron was disclosed in Ms. Benoit's rule 26(a) disclosures or answers to interrogatories. However, we agree that Ms. Matherne-Herron is not Ms. Benoit's employer and her knowledge as to whom she believes Ms. Benoit should have been in contact with, or if she met with students during her site visits, is entirely irrelevant. Furthermore, and more significantly, MedVance has pinpointed specific dates that Ms. Benoit allegedly reported false mileage. Ms. Matherne/Herron's declaration does not specifically address these particular dates. Accordingly, we find, without deeming it necessary to strike the affidavit, that this declaration does not create a genuine issue of material fact.

## MOTION FOR SUMMARY JUDGMENT

In her complaint, Ms. Benoit alleges racial discrimination and retaliation for her making a complaint in violation of Title VII of the Civil Rights Act. Specifically, Ms. Benoit's claims against MedVance include discriminatory discharge and hostile work environment based on race in violation of Title VII's anti-discrimination and anti-retaliation provisions. MedVance seeks to dismiss Ms. Benoit's retaliatory discharge claim because (1) she did not engage in a statutorily protected activity because she did not complain of discriminatory conduct under Title VII, (2) Ms. Benoit has not and cannot establish that the decision makers were aware of her protected activity, (3) the temporal proximity between Benoit's alleged activity and her termination are too remote to support a claim of retaliation, and (4) there is no evidence of a causal link between Ms. Benoit's alleged protected activity and her termination. MedVance seeks to dismiss Ms. Benoit's race discrimination and

wrongful termination claims because plaintiff cannot establish a *prima facie* case and even if she could, MedVance has articulated a legitimate, non-discriminatory reason for its decision to terminate her employment, and Ms. Benoit cannot show that MedVance's reason is pretextual. MedVance seeks to dismiss the hostile work environment claims because the alleged conduct Ms. Benoit complains of is not sufficiently severe or pervasive to affect a term, condition, or privilege of employment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[44] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[45] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[46] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[47] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[48] The burden requires

---

[44] Fed. R.Civ. P. 56(c).

[45] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[46] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[47] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[48] Anderson, 477 U.S. at 249.

more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[49] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[50] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[51]

## LAW AND ANALYSIS

In an employment discrimination case alleging disparate treatment, the court's focus is on whether a genuine issue of fact exists as to whether the defendant intentionally discriminated against the plaintiff.[52] Title VII prohibits employers from discriminating against employees on the basis of their race.[53] The evidentiary framework for analysis of Title VII disparate treatment claims was established by the Supreme Court in McDonnell Douglas Corp. v. Green.[54] In order to overcome a motion for summary judgment on a Title VII discrimination claim, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.[55]

---

[49] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[50] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[51] Anderson, 477 U.S. at 249-50.

[52] Grimes v. Texas Dept. of Mental Health & Mental Retardation, 102 F.3d 137, 139 (5th Cir. 1996); LaPierre v. Benson Nissan, Inc., 86 F.3d 444 (5th Cir. 1996).

[53] 42 U.S.C. 2000(e)2(a).

[54] 411 U.S. 792 (1973).

[55] Id. at 802-04; Manning v. Chevron Chemical Co., 332 F.3d 874 (5th Cir. 2003); Haynes v. Pennzoil Co., 207 F.3d 296, 300 (5th Cir. 2000); Shackleford v. Dloitte & Touche, 190 F.3d 398, 404 (5th Cir. 1999).

A plaintiff satisfies this initial burden by showing that (1) he belongs to a protected group, (2) he was qualified for the position sought, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class.[56]

*Hostile work environment*

MedVance maintains that any hostile work environment claim must be dismissed because the alleged discriminatory conduct Ms. Benoit complains of was not severe or pervasive, and falls woefully short of establishing a hostile work environment.

To establish a hostile work environment claim, Ms. Benoit must prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[57]

A "hostile environment" is one that does not affect an employee's economic benefit, but instead creates a hostile or offensive work environment. For racist comments, slurs, and jokes to constitute a hostile environment, there must be more than a few isolated incidents of racial enmity. Incidents of rude behavior without more are insufficient to create an actionable hostile work environment claim.[58] The Supreme Court has summed up the jurisprudence concerning hostile

---

[56] Manning, 332 F.3d at 881, citing Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

[57] Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (citing Celestine v. Petroleos de Venezuella, SA, 266 F.3d 343, 353 (5th Cir. 2001)).

[58] Hicks v. Central Louisiana Elec. Co. Inc., 97-1232 (La.App. 1st Cir. 5/15/98), 712 So.2d 656.

15

environment harassment as follows:

> [The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment.... (Citations omitted).[59]

A "hostile" work environment is defined, under the totality of the circumstances, by factors such as the frequency of the discriminatory conduct, its severity, its nature (e.g., humiliating, physically threatening, or merely an offensive utterance), and by whether it unreasonably interferes with an employee's work performance.[60] Title VII only bars conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace.[61]

There were three incidents that Ms. Benoit complains of regarding her allegation of hostile work environment: (1) the Campus director, Mr. Battiata inquired of her nationality shortly after she was re-hired, (2) during a meeting with the Surgical Technology Program group and in Ms. Benoit's presence, Mr. Battiata stated that "we [are] the first black administration. . . we need to show the corporate office that we [can] do this," and (3) the preferential treatment of a black male who allegedly submitted false mileage reports and was not terminated.[62]

---

[59] Faragher v. Boca Raton, 524 U.S. 775,788 (1998).

[60] Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

[61] Shepherd v. Comptroller of Public Account of State of Texas, 168 F.3d 871, 874 (5th Cir. 1999), cert. denied, 588 U.S. 963 (1999).

[62] The black male, Clinical Coordinator, Jesse Harrison, instead of being terminated was told not to submit any mileage reports for two months.

As to the "black administration" comment, Ms. Benoit suggests that because Mr. Battiata was a hispanic male, he viewed himself as a minority, and that such a statement is a solid foundation for race discrimination. MedVance notes that until recently, Ms. Benoit gave the false impression that Mr. Battiata was black; he is not.[63] Ms. Benoit further suggests that she was treated differently because Mr. Harrison, who allegedly forged approximately 3,000 miles, was not terminated. While this allegation may be relevant to Ms. Benoit's alleged wrongful termination, we find that it is not relevant to a claim for racial discrimination regarding a hostile work environment.

In determining whether an environment is sufficiently abusive to be active under Title VII, one of the factors court considers is whether the offensive conduct unreasonably interfered with the employee's work performance.[64] The court concludes that Ms. Benoit has failed to establish a hostile work environment claim against MedVance based on the complaints she has presented. The isolated incidents were not extreme, severe or pervasive and Ms. Benoit has failed to establish that they affected a term, privilege or condition of employment. Accordingly, plaintiff's hostile work environment claims against MedVance will be dismissed.

*Retaliatory discharge*

MedVance maintains that Ms. Benoit's retaliatory discharge claim must be dismissed because (1) she did not engage in a statutorily protected activity because she did not complain of discriminatory conduct under Title VII; (2) Ms. Benoit has not and cannot establish that the decision makers were aware of her protected activity, (3) the temporal proximity between Benoit's alleged

---

[63] R. #36, Benoit depo. Exhibit 2, EEOC charge R. #36-1.

[64] Butler v. Ysleta Indep. Sch. Dist., 161 F.3d 263, 269 (5th Cir. 1998)(citing Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)).

protected activity and her termination are too remote to support a claim of retaliation, and (4) there is no evidence to establish that a causal link exists between Benoit's alleged protected activity and her termination.

"A retaliation claim requires, in addition to proof of the plaintiff's protected activity, an adverse employment action, and a causal connection between the adverse action and the protected activity."[65] If Ms. Benoit succeeds in proving a *prima facie* case, the burden shifts to MedVance to "articulate some legitimate, non-retaliatory reason for its adverse employment action."[66]

Title VII defines "protected activity" as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII.[67] MedVance maintains that the retaliatory discharge claim must be dismissed because Ms. Benoit did not engage in a "protected activity." Specifically, MedVance relies on Ms. Benoit's admission in her deposition, that she did not complain about racial discrimination while employed at MedVance.[68]

Ms. Benoit relies on her conversation with Mr. Battiata in April of 2007 and later, Ms. Myles, when he made the "black administration" comment during a meeting. Ms. Benoit argues that this was a racially charged comment and that her subsequent conversations with Mr. Battiata, the Campus Director and Ms. Myles, her supervisor, constitutes a complaint which falls within the

---

[65] DeAngelis, 51 F.3d at 597, citing EEOC v. J.M. Huber Corp., 927 F.2d 1322 (5th Cir.1991).

[66] Hockman v. Westward Communications, LLC, 282 F. Supp. 512 (E.D. Tex. 2003).

[67] 42 U.S. C. § 2000e-3(a).

[68] Defendant's Statement of Material Fact ¶ 33; R. #37, Benoit Depo, pp. 247-249.

category of a protected activity. First, the court does not find Mr. Battiata's comment about the "black administration" to be racially charged as alleged by Ms. Benoit. Second, the isolated comment was made in April 2007. Ms. Benoit was terminated in August of 2007. The temporal proximity between Benoit's alleged protected activity and her termination are too remote to support a claim of retaliation. Even if we were to consider that the subsequent conversations with Ms. Myles regarding Mr. Battiata's comment was a protected activity, there is no causal link between Ms. Benoit's alleged protected activity and her termination some four (4) months later.[69] Accordingly, the claim for retaliatory discharge will be dismissed.

*Wrongful termination claim*

Plaintiff complains that MedVance racially discriminated against her when she was allegedly wrongfully discharged. To prove a *prima facie* case or race discrimination, Mr. Benoit must prove the following: (1) that she is a member of a protected class, (2) that she is qualified for the job at issue (3) that she suffered a tangible, adverse employment action; and (4) that employees outside her protected class were treated more favorably.[70] If she carries her burden, MedVance must articulate a legitimate, non-discriminatory reason for the challenged employment action. Then, Ms. Benoit must prove that MedVance's proffered reason for the challenged actions are not the true reasons, but

---

[69] See Myers v. Crestone Intern.,LLC, 121 F.App'x 25, 28 (5th Cir. 2005) (finding that three month lapse, by itself, did not created causal link); Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 471-72 (5th Cir. 2002)(finding that five month lapse, by itself, did not create a causal link); Bell v. Bank of America, 171 F.App'x 442, 444 (5th Cir. 2006)(finding that seven month lapse, by itself, did not demonstrate a causal link).

[70] Abarca v. Metro Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005); Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003).

a pretext for racial animus.[71]

MedVance asserts that because Mr. Battiata rehired Ms. Benoit before her discharge,[72] there is an inference of a lack of discriminatory animus with respect to Ms. Benoit's discharge. MedVance argues that the "same actor" inference of a lack of intentional discrimination applies here.[73] Mr. Battiata was involved in both the hiring and firing of Ms. Benoit within a period of approximately six (6) months. In Hernandez v. Muns, 101 F.3d 698(5 th Cir. 1996),[74] the court held that under the same actor inference, "where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exits that discrimination was not a determining factor for the adverse action taken by the employer." The court finds merit to MedVance's argument here and concludes that because Mr. Battiata was involved in both the re-hiring and firing of Ms. Benoit, this would militate in MedVance's favor in that there is an inference of a lack of intentional discrimination.

To establish her discrimination claim, Ms. Benoit alleges she was treated differently from another employee (Mr. Harrison, a black male) who was treated more favorably when he allegedly submitted false mileage reports which did not result in his termination. In disparate treatment cases,

---

[71] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); See also Price Rosiek Constr. Co., 509 F.3d 704, 708-09 (5th Cir. 2007)("Title VII is not a vehicle for second-guessing business decisions: and an "employer may take adverse action against an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not for a discriminatory reason")

[72] Mr. Battiata was involved in both the rehiring of Ms. Benoit after she voluntarily left the company, and her termination that is the subject of this lawsuit.

[73] Citing Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225 (5th Cir. 2000).

[74] Citing Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991). See also Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996).

the Fifth Circuit "compare[s] the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff."[75]

Mr. Battiata, with the recommendation of ADP Representative Kristi Parker terminated Ms. Benoit's employment. MedVance argues that Mr. Harrison cannot be a proper comparator to Ms. Benoit because he was supervised by Ms. Benoit whereas, Ms. Benoit was supervised by Ms. Myles. We find no merit to this argument.

MedVance next argues that Mr. Harrison can not be a proper comparator because he was not arrested for a DWI during working hours. Ms. Benoit's defense is that the charges were later dropped by the assistant district attorney. That may be so, but MedVance's knowledge at the time it accepted ADP's recommendation that she be discharged included not only the allegations of fraudulent mileage reports being submitted, but also the undisputed facts that (1) Ms. Benoit was involved in a car accident and failed to appear for work or make any site visits, (2) Mr. Battiata attempted to contact Ms. Battiata on both her home and cell phones to no avail, (3) a police officer contacted MedVance and informed them that Ms. Benoit had been arrested for a DWI, and (4) *The Baton Rouge Advocate* published Ms. Benoit's arrest for a DWI (second offense).

MedVance submits that if the court were to consider Mr. Harrison as a comparator, then Ms. Fleet-Hughes would also be a comparator. MedVance remarks that Ms. Fleet-Hughes, a black female, was terminated for submitting fraudulent mileage reports. A plaintiff's conduct that drew the adverse employment decision must have been "nearly identical."[76] If the difference between the plaintiff's conduct and the similarly situated employee accounts for the difference in treatment

---

[75] Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 901 (5th Cir. 2002).

[76] Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009).

received by the employer, the employees are not similarly situated for purposes of employment discrimination analysis.[77] The court concludes that Mr. Harrison is not a proper comparator because his conduct was not identical to the conduct of Ms. Benoit.

Next, MedVance argues the Ms. Benoit cannot establish the fourth element of a *prima facie* case because she was replaced by a white female. It is undisputed that Susan Blanchard, a white female was immediately promoted into Ms. Benoit's prior position as ST Program Director.[78] The court finds MedVance's argument has merit. Ms. Benoit cannot establish that she was replaced by someone outside the protected class. Accordingly, we find that Ms. Benoit has failed to establish the fourth element necessary to establish a *prima facie* case.

MedVance argues that even if Ms. Benoit establishes a *prima facie* case of discrimination, she cannot show that MedVance's asserted reasons for her termination are a pretext for race discrimination. MedVance submits that Ms. Benoit must put forth evidence to rebut each of the nondiscriminatory reasons the employer articulates. Ms. Benoit attempts to create an issue of fact through declarations signed by herself, her mother (Linda Benoit), Karen Simpson and Kelly Matherne.

Ms. Benoit's declaration, among other things, attempts to create a genuine issue of fact by her self-serving declarations that the persons Ms. Myles and Mr. Battiata contacted were not persons who would know whether or not she had visited the sites alleged to be visited on her mileage reports. The court finds that most of the declaration is irrelevant because it is not date specific. Furthermore, the court finds that based on our analysis, the declaration does not create an issue of material fact for

---

[77] Id.

[78] MedVance's Statement of Material Fact ¶ 24.

trial.

The declaration of Karen Simpson, who worked at Riverwest as the Director of OR in 2007, simply states that she had "no recollection" of being contacted by anyone at MedVance. The court finds that the declaration is not date specific and does not create a genuine issue of fact for trial.

Kelly Matherne's declaration attempts to create a genuine issue of material fact regarding Ms. Benoit's visits to Ochsner's, and who Ms. Benoit would be in contact with at Ochsner's during 2007. The declaration is not date specific and the court finds that Ms. Matherne's declaration is not relevant, nor does it create a genuine issue of fact for trial. Accordingly, the court finds that Ms. Benoit has failed to put forth evidence to create a genuine issue of fact to rebut MedVance's nondiscriminatory reasons for terminating her employment.

## CONCLUSION

For the reasons set forth above, the motion to strike will be granted in part and denied in part. The motion will be granted to the extent that paragraphs 3 and 4 of Jimmie Benoit's declaration and paragraphs 3 and 4 of Linda Benoit's declaration will be stricken from the record; otherwise the motion will be denied. The motion for summary judgment will be granted ,dismissing with prejudice plaintiff's claims against defendant, MedVance.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this ___9th___ day of March, 2011.


_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE